UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENISE ANSELL and : | |
| ANSELL LABEN LAW OFFICES, LLC, : | |
| : | NO. 3:05CV438 (MRK) |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| JOSEPH D. D'ALESIO, : | |
| CYNTHIA L. CUNNINGHAM, and : | |
| DAVID M. IACCARINO, : | |
| : | |
| Defendants. : | |

**RULING AND ORDER**

Plaintiff Denise Ansell and her law firm brought this action after Defendants did not renew Plaintiffs' contract with the State of Connecticut's Judicial Branch to serve as appointed counsel to indigent parties in juvenile and family court matters. In their Complaint [doc. # 1], Plaintiffs allege that Defendants refused to renew their contract in retaliation for Ms. Ansell's vigorous representation of a client, which resulted in a heated exchange with a Connecticut Superior Court judge. Plaintiffs assert that by denying their application to renew the contract, Defendants violated Plaintiffs' rights under the First Amendment as well as the Fourteenth Amendment's Due Process and Equal Protection clauses. Defendants counter that their decision not to renew Plaintiffs' contract was a legitimate exercise of their discretion to award contracts to attorneys and that they were justified in not renewing Plaintiffs' contract based on Ms. Ansell's behavior in court. Defendants have moved for summary judgment and, for the reasons discussed below, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 24].

# I.

This action arises out of incidents that occurred in July and August 2003. At that time, Ms. Ansell and her law firm were under contract with the State of Connecticut's Judicial Branch to serve as appointed counsel to indigent children and parents in proceedings before the Connecticut Superior Court for Juvenile Matters. In one such case, Ms. Ansell represented a mother in a temporary custody hearing initially set before state Superior Court Judge Nicola Rubinow. Ms. Ansell perceived Judge Rubinow to be biased against her and subsequently moved to disqualify Judge Rubinow. According to Ms. Ansell, her motion was never ruled upon, but the case was nonetheless reassigned to Superior Court Judge Carmen Lopez.

On August 18, 2003, Ms. Ansell appeared at a hearing before Judge Lopez. During that hearing, Ms. Ansell and Judge Lopez engaged in an allegedly heated dialogue in which Ms. Ansell perceived Judge Lopez to be questioning her competence. During the exchange, Ms. Ansell declared that she "need[ed] to leave the [court]room," at which point Judge Lopez noted on the record that Ms. Ansell "[s]lammed the door open and walked out after scolding the court. At this point, we are going to stand in recess." *See* Memorandum in Support of Motion for Summary Judgment [doc. # 25] at 5-6. That afternoon, Judge Lopez offered Ms. Ansell an opportunity to apologize to the court, which she did after explaining that "I was going to vomit, and I have a tendency to projectile vomit, so I thought it better to announce that I had to leave to go quickly, and I did make it to the ladies room but I did projectile vomit." *Id*. at 7. Nevertheless, the problems between counsel and the court continued into the following day, where at one point Ms. Ansell accused court staff of being hostile toward her and declared that her clients "feel their rights are being trampled on." *Id.*

Defendants claim that Ms. Ansell's conduct was bizarre and inappropriate. For her part, Ms. Ansell asserts that it was the judge's conduct that was inappropriate, not her own. Given the posture of the current motion, the Court will not resolve this factual disputes but will instead take all facts, and all reasonable inferences from them, in the light most favorable to Plaintiffs.

From 1998 through 2003, Ms. Ansell and her law firm had received one-year contracts to represent indigent clients in juvenile court, and the law firm applied to renew its contract for 2004. As in past years, it appears from the record that Plaintiffs' contract application was first reviewed by a pre-screening panel, which consisted of four voting members: Judge Michael Mack, then-Chief Administrative Judge for Juvenile Matters; Judge Thomas Parker, then-Deputy Chief Court Administrator; Judge Trial Referree Aaron Ment, a former Chief Court Administrator; and Defendant Joseph D'Alesio, then-Executive Director of Superior Court Operations. Defendants Cynthia Cunningham and David Iaccarino were non-voting staff members of the panel. Plaintiffs claim that they had no knowledge of this pre-screening process and also claim that Mr. D'Alesio was responsible for decisions concerning contract applications. Regardless of the parties' disagreement as to the precise decision-making process, both parties agree that Plaintiffs' 2004 application to serve as appointed counsel for indigent parties was unanimously rejected by the pre-screening panel and their contract was thus not renewed. Plaintiffs allege that the denial of the application to renew their contract was in retaliation for the comments made by Ms. Ansell during the hearings before Judge Lopez, and therefore, was in violation of their rights under the First Amendment.

In addition, Plaintiffs were notified in January 2004 that they would be audited by the Judicial Branch. Defendants claim that attorneys were selected for audits based upon objective criteria and that Plaintiffs were one of many attorneys selected to be audited at that time. The audit

3

concluded that Plaintiffs owed the Judicial Branch $10,772. Plaintiffs contend that they were selected to be audited in retaliation for Ms. Ansell's comments to Judge Lopez, again in violation of the First Amendment. Moreover, they contest the validity of the audit and the audit's results. Plaintiffs concede, however, that they reimbursed the Judicial Branch the full amount requested by the audit, although they claim this was done in order to receive $40,000 owed to them by the Judicial Branch that was being withheld, and also so that Plaintiffs could be considered for a Judicial Branch contract in 2005. Indeed, Plaintiffs applied for and they were awarded a contract in 2005 to represent indigent parties in family court (by contrast to their earlier contracts, which were for juvenile court). The 2005 contract offered by Defendants initially precluded Ms. Ansell from performing work under the contract. However, Defendants later agreed to allow Ms. Ansell to work under the contract. Nonetheless, Plaintiffs never signed the 2005 contract for representation of indigent parties in family court.

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006) (internal quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and 'only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp.*

4

*Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must draw all ambiguities and inferences in favor of Plaintiff, *see Anderson*, 477 U.S. at 255. If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

## III.

**First Amendment Retaliation**

For purposes of considering the Motion for Summary Judgment, the Court will assume *arguendo* that Plaintiffs' contract with the State was not renewed in retaliation for Ms. Ansell's conduct before Judge Lopez in July and August 2003. Therefore, the only question is whether such retaliation (assuming it occurred) would constitute a violation of Plaintiffs' First Amendment rights. That question, in turn, depends largely on whether the Supreme Court's recent decision in *Garcetti v. Ceballos*, 126 S. Ct. 1951 (2006) applies here. In *Garcetti*, the Supreme Court considered the case of a state prosecutor who believed he was retaliated against after he raised doubts as to the legitimacy of a search warrant. The Supreme Court distinguished between statements made by public employees in their official capacities and those made as private citizens. The Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking

5

as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 1960; *see Skehan v. Village of Mamaroneck*, 465 F.3d 96, 105 (2d Cir. 2006) (citing *Garcetti*).

Here, neither party disputes that the pertinent statements made by Ms. Ansell were made in her official capacity as a court appointed attorney representing a party in a pending matter before the Superior Court. In fact, when asked during her deposition to describe precisely what activities she performed which were the basis of Defendants' retaliation, Ms. Ansell stated unequivocally that she was retaliated against *only* for "perform[ing] her duties" in the case before Judge Lopez. Neither Ms. Ansell nor any other plaintiff claims that they were retaliated against for any statements made as private citizens. Therefore, on its face, *Garcetti* would appear to bar Plaintiffs' action.

Nevertheless, Plaintiffs assert that *Garcetti* is inapplicable to their case because they were independent contractors as opposed to full-time employees and, they argue, *Garcetti* applies only to full-time employees. Plaintiffs cite no case that draws such a distinction. Instead, they declare that "the public policy implications of [applying *Garcetti* to independent contractors] are staggering." Brief in Opposition to Summary Judgment [doc. # 33] at 8.

Plaintiffs are wrong. Numerous courts, including the Supreme Court, have concluded that for purposes of retaliation claims brought under the First Amendment, there is no legal distinction between independent contractors with pre-existing contracts (like Plaintiffs in this case) and full-time employees. *See Bd. of County Com'rs, Wabaunsee County v. Umbehr*, 518 U.S. 668, 684-85 (1996) ("Neither the Board nor Umbehr have persuaded us that there is a 'difference of constitutional magnitude' between independent contractors and employees in this [First Amendment] context. Independent government contractors are similar in most relevant respects to government employees,

6

although both the speaker's and the government's interests are typically-though not always-somewhat less strong in the independent contractor case. We therefore conclude that the same form of balancing analysis should apply to each.") (internal citations omitted);[1] *see also Oscar Renda Contracting, Inc. v. City of Lubbock, Tex.*, 463 F.3d 378, 385 (5th Cir. 2006) ("[I]t is logical to conclude that all independent contractors fall within the standard set forth in . . . the government employee cases."); *Springer v. Henry*, 435 F.3d 268, 275 (3d Cir. 2006) ("The First Amendment's protection of an employee's right to speak on matters of public concern extends to independent contractors."); *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir. 2004) ("When a business vendor operates under a contract with a public agency, we analyze its First Amendment retaliation claim . . . using the same basic approach that we would use if the claim had been raised by an employee of the agency."). Given the unambiguous holdings of these courts, the Court will not adopt the distinction between independent contractors and employees that Plaintiffs seek to draw in this case. The Court also notes that the public policy arguments that Plaintiffs marshal in support of their claimed distinction mirror those arguments made by Justice Breyer in his dissenting opinion in *Garcetti*, *see* 126 S. Ct. at 1974-75, arguments that the majority rejected. *Garcetti*, therefore, applies to this case, and its holding requires the granting of summary judgment to Defendants on Plaintiffs' First Amendment retaliation claim.

---

[1] In its decision in *Umbehr*, the Supreme Court stated that it was not reaching the question of whether a distinction could be drawn between employees and independent contractors *without* a pre-existing commercial relationship with the government. *See Umbehr*, 518 U.S. at 685; *African Trade & Info. Ctr., Inc. v. Abromaitis*, 294 F.3d 355, 359 (2d Cir. 2002) (noting that the Supreme Court reserved judgment on that question). Given Plaintiffs' pre-existing contractual relationship with Defendants in this case, this Court need not, and does not, reach the question whether the Supreme Court's First Amendment retaliation jurisprudence applies to an independent contractor without a pre-existing commercial relationship.

**Due Process**

Plaintiffs also claim that the denial of their contract in 2004 violated their rights to Procedural Due Process. Plaintiffs allege that they had a constitutionally protected property interest in the renewal of their one-year contract and that the Defendants' decision not to renew the contract was arbitrary and "was conducted in secret, with no notice to the plaintiffs and no opportunity to be heard at any time before or after the decision was made." Brief in Opp. to Sum. J. [doc. # 33] at 12.

As the Second Circuit has held, "[t]o determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, we must first identify the property interest involved. Next, we must determine whether the plaintiff received constitutionally adequate process in the course of the deprivation." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). Not every statutorily conferred benefit, however, constitutes a property interest protected by the Constitution. "'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id*.

Here, the contracts awarded by the State do not constitute a valid property interest as defined under Connecticut state law. Each contract was for a one-year term only and nothing in the contracts themselves said anything, explicitly or implicitly, about entitlement to renewal at the end of the contractual term. Nor is there any indication in the record that Plaintiffs were ever orally assured

by anyone acting for the State that their contract would be automatically renewed. In fact, Defendants considered Plaintiffs' 2004 application among numerous other applications, and Defendants rejected Plaintiffs' application along with sixteen other applicants. *See* Reply Memorandum in Support of Summary Judgment [doc. # 36] at 9. Plaintiffs may well have held a unilateral expectation that their contract would be renewed. But such a unilateral expectation cannot establish a property interest protected by the Constitution, and this is true regardless of whether the contract at issue is construed as a contract for services or an employment contract.

Thus, in *C&E Services, Inc. v. D.C. Water and Sewer Authority*, 310 F.3d 197 (D.C. Cir. 2002), the District of Columbia Circuit considered whether an applicant who was the lowest bidder for a government contract held a constitutionally protected property right to be awarded the contract since the relevant statute required the government to award the contract to lowest bidder. Even with the statutory directive regarding how to award the contract, the court held that no property right existed since the government continued to possess some discretion as to how it awarded the contract, demonstrated by the government's right to cancel the bidding process at any time prior to execution of the contract. *Id*. at 200. Here, the State has even broader discretion in awarding contracts than the District of Columbia possessed in *C&E Services, Inc.* No statute exists that directs the State regarding the award of one-year contracts to appointed attorneys. Instead, Defendants appear to have complete discretion in deciding whether to renew Judicial Branch contracts after each contracts' one-year term has expired. As in *C&E Services, Inc.*, therefore, the State's broad discretion in awarding the contract defeats Plaintiffs' attempt to establish a property interest.

Even if the Court construed Plaintiffs' contract as an employment contract (an issue the Court need not decide), Plaintiffs' arguments would suffer the same fate. "In the employment context, a

9

property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause." *Legg v. DellaVolpe*, 228 F. Supp. 2d 51, 61 (D. Conn. 2002) (quoting *S & D Maintenance Co. v. Goldin*, 844 F.2d 962, 967 (2d Cir.1988)). Again, Plaintiffs cite no statute that would bar Defendants from not renewing Plaintiffs' contract. Without such a statutory bar, no property interest exists under the Due Process Clause. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' due process claim.

**Equal Protection**

Plaintiffs' Complaint also includes an Equal Protection claim. *See* Complaint [doc. # 1] ¶ 16. However, Plaintiffs did not address this claim in their Brief in Opposition to Summary Judgment [doc. # 33]. Therefore, the Court will deem Plaintiffs to have waived their equal protection claim. *See Schaefer v. Town of Victor*, 457 F.3d 188, 210 (2d Cir. 2006).

**IV.**

In sum, the Court GRANTS Defendants' Motion for Summary Judgment [doc. # 24] and **the Clerk is directed to close the file.**

IT IS SO ORDERED.

/s/  Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: April 25, 2007**.